In re Thomas C. WHITE, Ind. & d/b/a Thomas C. White & Associates and Joyce A. White, Ind. & f/d/b/a Joyce's Child Care Center, Debtors.

**Bankruptcy No. 383–02933.**

United States Bankruptcy Court, M.D. Tennessee.

June 20, 1984.

Robert H. Waldschmidt, Nashville, Tenn., for debtors.

Gary Jewel, Memphis, Tenn., for Midland Bank & Trust.

### MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on a request to confirm the plan of reorganization submitted by the debtors pursuant to 11 U.S.C. § 1129 (West 1979). By agreed order entered on March 7, 1984, a final hearing on Midland Bank & Trust Company's (hereinafter referred to as "Midland") motion for relief from the stay pursuant to 11 U.S.C. § 362(d)(2) (West 1979) has been consolidated with this confirmation hearing.

Midland has objected to confirmation on the grounds that the plan is not feasible pursuant to 11 U.S.C. § 1129(a)(11) (West 1979), that the plan was not proposed in good faith pursuant to 11 U.S.C. § 1129(a)(3) (West 1979), and that the plan is not fair and equitable pursuant to 11 U.S.C. § 1129(b) (West 1979). Upon consid-

eration of testimony of witnesses, exhibits, briefs of the parties, statement of counsel, and the entire record, the court concludes that the debtors' plan meets the requirements of 11 U.S.C. § 1129 (West 1979) and shall be CONFIRMED over the objection of Midland pursuant to 11 U.S.C. § 1129(b) (West 1979). Since confirmation of the debtors' plan moots Midland's motion for relief from the stay, the court will not decide that issue.

The following shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

One of the debtors, Thomas C. White, has owned and operated a small land surveying business, Thomas C. White & Associates, in Waverly, Tennessee, over the past 11½ years. In his business, Mr. White employs his wife, the co-debtor, and his two sons as well as three other employees. In order to secure financing for his business, Mr. White borrowed funds from a number of creditors including his largest creditor, Midland. In 1981, Mr. White's business began experiencing financial difficulties due in large part to the depressed economic conditions in Waverly, Tennessee. As a result of these difficulties, the debtors were unable to make a number of mortgage payments and, on October 28, 1983, filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

The objecting creditor, Midland, was listed by the debtors as holding a claim totaling approximately $146,000. Midland's claim was secured by mortgages on four parcels of real property owned by the debtors. By an agreed order entered into between the debtors and Midland on January 12, 1984, Midland was allowed to foreclose upon three of these parcels of real property. Midland is presently seeking relief from the stay imposed by 11 U.S.C. § 362 (West 1979) in order to proceed with foreclosure on the fourth parcel of property, an 87-acre farm in Waverly, Tennessee.

On February 22, 1984, the debtors filed a plan of reorganization with this court. The plan provided for payment of claims identified in ten separate classes. The debtors proposed funding their plan by tendering payments of $2,800 per month received from the debtors' surveying business and by subdividing a portion of the 87-acre farm property. Midland, the sole member of class IX, rejected the plan; members of class IV and VI abstained from voting; and, all other classes of creditors accepted the plan.

The debtors' plan provides for the payment of two claims asserted by Midland. The first claim will be secured by the accounts receivable of Mr. White's business to the extent of $12,000 and shall be paid at a rate of $270 per month with interest accruing at the rate of 12% per annum until the claim is paid in full. Midland's second claim is in the amount of $88,200 and will be secured by a security interest in the 87-acre farm owned by the debtors. This latter claim, accruing interest at a rate equal to the FMHA mortgage rate modified in accordance with the current FMHA mortgage rates on May 15 and November 15 of each year, will be paid over a ten-year period. Midland will also receive any funds from the sale of the debtors' subdivided farm land, which will accordingly reduce the debt to Midland.

The debtors, Thomas C. White and Joyce A. White, and their son, Greg White, testified in support of the plan. This testimony dealt primarily with the farm property which the debtors proposed to subdivide and the income the debtors expected to receive from the surveying business.

The debtors testified that they intended to subdivide 28.78 acres of wooded farm land located on Cane Creek Road, two-tenths of a mile from the city limits of Hohenwald, Tennessee. The debtors' remaining farm land is separated by Cane Creek Road from that which the debtors intend to subdivide. The farm land has been owned by Mr. White's family since 1961 and Mr. White's mother presently resides on the farm. The debtors claimed that the only improvements necessary to allow subdivision of the farm property would be the improvement of a dirt road

and the installation of water mains. They estimated that the road could be improved for $1,500 and that the water mains could be installed for a small amount. Although no contracts for sale were tendered, Mr. White stated that an adjoining land owner as well as a local company had expressed interest in purchasing a combined total of approximately ten to twelve acres.

Several exhibits were tendered and evidence was presented concerning the history and probable future of Mr. White's surveying business. Although Mr. White's business had grossed only $52,000 a year over the past two years, Mr. White projected that gross income for 1984 would total $102,787.23. Mr. White's projections were based on the value of new projects acquired in the first 3⅔'s months of 1984, current work in progress, current accounts receivable, the general economic conditions in Humphreys and surrounding counties and his significant work experience. On cross-examination, Mr. White admitted that he could not have funded the proposed plan in either of the prior two years; however, the volume of new work acquired by his business in the first few months of 1984 reflect that his business is indeed expanding.

Midland presented the testimony of Mr. Hines, a vice-president of Midland Bank with experience in the foreclosure and resale of real property, who had visited the farm property in question. He testified that in order to subdivide this property, the debtors would need to improve the existing road at a probable cost of $30,000 to $32,000. He further testified that the market for real property in Humphreys County is presently very weak. Finally, Mr. Hines testified that the bank felt the interest rate provided to the bank under the plan for repayment of the $12,000 secured by accounts receivable and the $88,000 secured by real property was too low. He stated that both loans had been commercial loans which the bank expected the debtors would repay in a short period of time.

■ In order for a plan of reorganization to be approved by this court, the plan must comply with all the requirements of Chapter 11 as stated in 11 U.S.C. § 1129(a)(1). The court has a duty to examine the plan and determine whether or not the plan conforms to the requirements of 11 U.S.C. § 1129, regardless of whether objections are filed. *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141 (Bankr.S.D.N.Y.1984); *In re Economy Cast Stone Company*, 16 B.R. 647, 650 (Bankr.E.D.Va.1981). In fulfilling this duty, the court concludes that the specific objections raised by Midland are without merit.

■ First, Midland asserts that the plan was not proposed in good faith as required by 11 U.S.C. § 1129(a)(3).[1] Essentially, a reorganization plan is proposed in good faith when there is "a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Nite Lite Inns*, 17 B.R. 367, 371 (Bankr.S.D.Cal.1982). *See Connell v. Coastal Cable T.V., Inc.*, 709 F.2d 762, 764 (1st Cir.1983); *In re Toy & Sports Warehouse, Inc., supra* at 141, 149; *In re Nikron, Inc.*, 27 B.R. 773, 778 (Bankr.E.D.Mich.1983). Herein, the debtors have proposed a plan which provides for payments to both secured and unsecured creditors. The secured creditors will receive the value of their collateral plus interest while the unsecured creditors will receive payment contingent upon both the surveying business and the subdivision of the debtors' property. The court finds that the financial assumptions underlying the debtors' plan are reasonable and there is a likelihood of success. Thus, the requisite good faith has been established by the debtors.

■ Midland also claims that the proposed plan does not comply with § 1129(a)(11) in that it is not feasible and

1. 11 U.S.C. § 1129(a)(3) (West 1979) provides:
   "(a) The court shall confirm a plan only if all of the following requirements are met:

   (3) The plan has been proposed in good faith and not by any means forbidden by law.

will most likely be followed by liquidation.[2] Courts have held that in order to determine whether a plan is feasible, the court must examine "... the adequacy of the capital structures; the business's earning power; economic conditions; management's ability; the probability of the present management's continuation; and any other factors related to the successful performance of the plan." *In re Polytherm Industries, Inc.,* 33 B.R. 823, 831 (W.D.Wis.1983). *See In re Huckabee Auto Company,* 33 B.R. 141, 145 n. 2 (Bankr.M.D.Ga.1981); *In re Merrimack Valley Oil Co., Inc.,* 32 B.R. 485, 488 (Bankr.D.Mass.1983). The court need not find that the plan is guaranteed of success, but only that a reasonable expectation of success exists. *Huckabee Auto Company* at 145 n. 2. At trial, the court heard testimony concerning the present earning power of the surveying business and the projected earning power of the business based on work in progress. The court also heard testimony concerning prospective purchasers of the subdivided farm land. Based on this evidence, as well as the debtors' demonstrated expertise in the surveying business, the court has determined that the plan is feasible within the meaning of § 1129(a)(11).

Finally, Midland alleges that the debtors' plan does not meet the fair and equitable requirements of § 1129(b)(2) and thus, may not be confirmed over its objection. The court finds that the debtors' plan allows Midland to retain its lien on the property securing its claims, provides Midland with deferred cash payments totaling the allowed amount of its claims plus appropriate interest, and provides that Midland receive any proceeds obtained from the sale of its collateral.[3] With respect to Midland, the court finds that the debtors' plan meets both the fair and equitable requirement of 1129(b)(2) and the requirement that the plan not discriminate unfairly pursuant to 1129(b)(1). *See In re Patel,* 21 B.R. 101 (Bankr.M.D.Fla.1982); *In re W.E. Parks Lumber Co., Inc.,* 19 B.R. 285, 290 (Bankr. W.D.La.1982).

The plan proposed by the debtor not only conforms to all of the applicable requirements of § 1129(a) but it also conforms to the requirements of § 1129(b) with respect to each class of dissenting creditors. Therefore, the court hereby ORDERS that the plan proposed by the debtor is CONFIRMED.

This court's order confirming the debtors' plan renders Midland's request for relief from the stay moot. *See Central Trust Company N.A. v. Mr. D Realty Company,* 27 B.R. 359, 364 (Bankr.S.D. Ohio 1983); *Paradise Valley Country Club v. Sun Valley Development Company,* 26 B.R. 990, 991–992 (Bankr.D.Colo. 1983), *aff'd.* 31 B.R. 613 (D.Colo.1983).

IT IS, THEREFORE, SO ORDERED.

### JUDGMENT

In accordance with the Memorandum contemporaneously entered herein, this court hereby ORDERS, ADJUDGES AND DECREES that the plan of reorganization submitted by the debtors is hereby CONFIRMED.

IT IS, THEREFORE, SO ORDERED.

---

**2.** 11 U.S.C. 1129(a)(11) (West 1979) provides:

"(a) The court shall confirm a plan only if all of the following requirements are met:

. . . . .

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."

**3.** The court finds that the parties have agreed on the allowed amount of Midland's secured claims and, thus, valuation is not at issue in this hearing.