**In re Rudolph Owen CHEATHAM, and Marie H. Cheatham, Debtors.**

**Bankruptcy No. 85–52343–ATS.**

United States Bankruptcy Court, E.D. North Carolina.

Sept. 11, 1987.

Mark C. Kirby, Raleigh, N.C., for Federal Land Bank.

Donald A. Davis, Raleigh, N.C., for debtors.

## MEMORANDUM OPINION

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the confirmation of the debtors in possession's chapter 11 plan of reorganization. Objections to the plan were filed by Central Carolina Bank & Trust Company, N.A. ("CCB") and by The Federal Land Bank of Columbia ("FLB"). The confirmation hearing was held in Raleigh, North Carolina, on July 21, 1987.

■ CCB claimed an administrative expense priority for its claim pursuant to 11 U.S.C. § 507(b). On August 31, 1987, the court entered an order determining that CCB has a claim of $11,283.82 which is a priority claim under 11 U.S.C. § 507(b). That claim must be paid in full in cash upon the effective date of the plan. Consequently, CCB's claim will be satisfied and CCB has no grounds to object to confirmation of the chapter 11 plan. This Memorandum Opinion will, therefore, only deal with the objections raised by FLB—(1) that the plan is not "fair and equitable" with respect to FLB; (2) that the plan is not filed in good faith; (3) that FLB will not receive or retain under the proposed plan property of a value, as of the effective date of the plan, that is not less than the amount FLB would receive or retain if the debtors' property was liquidated under chapter 7; (4) that the plan is not feasible and confirmation is likely to be followed by liquidation or need for further financial reorganization; and (5) that the debtors have failed to file accountings and to comply with this court's orders.

--------

This bankruptcy court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334,
151, and 157, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(L), which this court may hear and determine.

--------

Rudolph Owen Cheatham and Marie H. Cheatham filed a joint voluntary petition for relief under chapter 11 of the Bankruptcy Code on December 19, 1985. Since that date, Mr. and Mrs. Cheatham have been debtors in possession pursuant to 11 U.S.C. § 1101(1).

Mr. Cheatham has been a farmer in Oxford, North Carolina, for most of his life. Mrs. Cheatham is employed at Northern Telecom and earns approximately $18,000 per year.

The debtors own approximately 200 acres of farm land which is encumbered by a deed of trust to FLB. FLB is the holder of a fully secured claim of approximately $151,000 plus interest and has voted to reject the debtors' plan.[1]

The debtors' plan provides that the debtors shall retain all of the property of the estate and pay $40,000 to a disbursing agent on or before December 1, 1987, and $40,000 on December 1 of each year thereafter for five more years or until such time as all creditors with allowed claims have been paid in full. Although it is not entirely clear from the plan whether payments are to continue after six years if all creditors are not paid in full, the court interprets the plan to mean that annual payments shall be made for six years or until all allowed claims are paid in full, whichever shall first occur.

■ The plan provides that costs and expenses of administration under 11 U.S.C. § 507(a)(1) (Class 1) be paid from the $40,000 annual payment. That provision, however, is inconsistent with 11 U.S.C. § 1129(a)(9)(A) which states that claims un-

---

**1.** FLB filed a proof of claim as a secured claim, but filed a ballot rejecting the plan as an unsecured creditor. The court assumes that the rejection as an unsecured creditor was merely a clerical error.

der 11 U.S.C. § 507(a)(1) and § 507(a)(2) must be paid in full *in cash* on the effective date of the plan, unless the claimant agrees to a different treatment. Counsel for the debtor presumably has agreed to be paid from the annual payment, but CCB has not. Accordingly, CCB shall be paid in full upon the effective date of the plan, which the court determines to be ten days after the entry of the order of confirmation.

■ The debtors propose to pay tax claims under 11 U.S.C. § 507(a)(7) (incorrectly described as claims under § 507(a)(6) in the plan) in annual payments in an amount "calculated to pay such claims in full over the life of the Plan." This provision is somewhat confusing since Paragraph 5 of the plan says that claims specified in § 507(a)(6) (presumably meaning § 507(a)(7)) shall not remain unpaid "after the expiration of five (5) years after the date of assessment of such claim." 11 U.S.C. § 1129(a)(9)(C) provides that tax claims under 11 U.S.C. § 507(a)(7) shall be paid in cash payments over a period not exceeding six years after the date of assessment. The value of the payments, as of the effective date of the plan, must equal the allowed amount of the claim. The debtors contend that there are no priority tax claims, but to the extent that the Granville County tax claim has not been paid, that claim may be paid from the $40,000 annual payment in such equal annual amounts as will satisfy the claim in full within five years from the date of assessment plus interest at the rate of seven percent (7%) per annum.

■ The third class is the claim of FLB which the debtors propose to pay in annual installments of $28,000 from the $40,000 annual payment. The FLB lien is to be retained. The amount of FLB's fully secured claim is as stated in the proof of claim filed on March 10, 1986—$190,977.31 plus interest from May 1, 1986, in the amount of $61.5781 per day plus costs, trustee's and attorneys' fees—less the $40,000 paid by the debtors as adequate protection payments in late 1986. The amount of FLB's claim does not state an amount owed

for "costs, trustee's and attorneys' fees," and, therefore, no amount is included in FLB's secured claim for those items. The secured claim of FLB is approximately $151,000 ($190,977.31—$40,000) plus interest. The value of the 200 acres exceeds the debt, but the value is not more than $200,000.

FLB contends that the treatment of FLB's secured claim does not satisfy the confirmation requirements of 11 U.S.C. § 1129—the court does not agree with that contention.

A plan may be confirmed over the objection of a class of secured claims through use of the "cramdown" method of confirmation provided in 11 U.S.C. § 1129(b)(1). Under 11 U.S.C. § 1129(b), for a plan to be confirmable over the objection of a class of claims, all of the applicable requirements of 11 U.S.C. § 1129(a) (other than § 1129(a)(8)) must be met, the plan may not discriminate unfairly, and the plan must be "fair and equitable" with respect to each impaired class of claims that has not accepted the plan.

FLB's claim is the sole claim in class 3 and FLB has voted to reject the plan. Therefore, to be confirmable, the plan must meet the requirements of 11 U.S.C. § 1129(b).

For the reasons later stated in this opinion, the court has concluded that all the requirements of 11 U.S.C. § 1129(a) have been met with the exception of the approval of class 3, as required by 11 U.S.C. § 1129(a)(8). FLB's claim is impaired as defined in 11 U.S.C. § 1124, and therefore the plan may not unfairly discriminate against FLB's claim, and the plan must be fair and equitable. FLB does not claim that the treatment of its claim constitutes unfair discrimination and the court finds that, for purposes of 11 U.S.C. § 1129(b)(1), the plan does not discriminate unfairly with respect to class 3.

■ The "fair and equitable" requirement of 11 U.S.C. § 1129(b)(1) means several things. First, "fair and equitable" means that, in a very literal sense, the plan must be "fair" and the plan must be "eq-

uitable." Secondly, to be "fair and equitable" the plan must satisfy the statutory requirements of 11 U.S.C. § 1129(b)(2). Under 11 U.S.C. § 1129(b)(2)(A), to be 'fair and equitable the plan must provide with respect to a class of secured claims:

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

■ The court finds that the proposed plan meets both the literal and statutory meaning of "fair and equitable."

The debtors' obligation to FLB was incurred in June, 1981, in the principal amount of $165,000. The loan, which provided for interest at FLB's floating interest rate, was secured by the 200 acre farm land and by FLB stock, and was to be payable in five annual installments of $20,382.19 beginning on November 1, 1982.

The debtors' plan proposes to modify the terms of the contract by increasing the amount of the annual payment to $28,000 and by moving the payment date from November 1 to December 1. Otherwise, the terms of FLB's promissory note and deed of trust, including the floating interest rate, remain unchanged. Since the filing of the petition, the debtors have paid $40,000 to FLB and have agreed to pay $28,000 on each December 1st for the next six years. That treatment is essentially what FLB bargained for in 1981 and is fair and equitable to FLB as those terms are commonly used.

■ The treatment also meets the statutory requirement of fair and equitable. Specifically, FLB will retain its lien to the extent of the allowed amount of its claim (11 U.S.C. § 1129(b)(2)(A)(i)(I)) and FLB will receive deferred cash payments totaling the allowed amount of its claim, of a value, as of the effective date of the plan, of at least the value of FLB's interest in the estate's interest in the 200 acre farm. (11 U.S.C. § 1129(b)(2)(A)(i)(II)). The interest rate to be paid is the FLB floating rate. Although there was no evidence introduced concerning the proper discount factor to be used to determine the value of the payments under the plan, in the absence of such evidence, the payment of interest at the contract rate meets the requirement. *See In re Monnier Brothers*, 755 F.2d 1336, 1339 (8th Cir.1985). The court therefore concludes that with respect to FLB, the requirements of 11 U.S.C. § 1129(b)(1) are met.

The fourth class includes secured claims held by General Motors Acceptance Corporation ("GMAC") and John Deere Company. These claims are secured by equipment and vehicles and the claims are fully secured. There was no objection to this classification, and the only ballots filed in this class were acceptances by GMAC. The claims of GMAC and John Deere will be paid in full plus interest and each will receive annual payments, from the $40,000 annual payment, of $3,000.

The fifth class is the undersecured claim of Peoples Bank. That claim, in the amount of approximately $29,000, is secured by Roanoke bulk barns having a value of approximately $10,000. The bulk barns have been surrendered to Peoples Bank and Peoples Bank has agreed to assert an unsecured claim only in the amount of $12,124.43—Peoples Bank has voted to accept the plan.

The final class, class six, is made up of the unsecured claims. The unsecured claims amount to approximately $69,000 and are to be paid *pro rata* from the remainder of the $40,000 annual payments. The debtors estimate that unsecured creditors will receive a dividend of approximately 60%. The unsecured creditors voting on the plan voted to accept the plan.[2] No one has suggested that the "best interests" of creditors' test of 11 U.S.C. § 1129(a)(7)(A)(ii) is not met and the court finds that the requirement of 11 U.S.C. § 1129(a)(7)(A)(ii) is satisfied. The debtors' primary asset is the 200 acre farm which has a value of not more than $200,000. The debtors would be entitled to claim a $15,000 exemption in the farm, leaving a value of $185,000. After deducting the FLB indebtedness, the equity is clearly less than the present value of the sums to be paid to holders of unsecured claims under the plan.

FLB argues that the plan should not be confirmed because the plan was not filed in good faith (11 U.S.C. § 1129(a)(3)), because the plan is not feasible (11 U.S.C. § 1129(a)(11)), and because the debtors failed to comply with this court's order to provide monthly accountings. There is some evidence before the court to support FLB's contentions; however, the court is not convinced that the confirmation standards are not met.

### Feasibility

█ The feasibility test is "firmly rooted in predictions based on objective fact." *In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985). The test also "contemplates 'the probability of actual performance of the provisions of the plan. Sincerity, honesty, and willingness are not sufficient to make the plan feasible, and neither are any visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts.' " *Id.*, at 420 (quoting *In re Bergman*, 585 F.2d 1171, 1179 (2d Cir.1978)) (quoting J. Moore & L. King, 9 *Collier on Bankruptcy* ¶ 9.07, at 1139 (14th ed. 1978)).[3] Solid evidence is required. *In re Matis*, 74 B.R. 363 (Bankr.N.D.N.Y.1987). Projecting future farm income and expenses, however, is not an "exact science," *In re Monnier Brothers*, 755 F.2d 1336, 1341 (8th Cir.1985), and there are certainly no guarantees that predictions will be met and expectations fulfilled. There can be no doubt that "in a farm economy, projections over long periods of time are treacherous. Markets are subject to wide swings. Weather is never predictable. Government programs come and go." *In re Fursman Ranch*, 38 B.R. 907, 912 (Bankr.W.D.Mo. 1984). Nevertheless, in spite of the uncertainties related to farming, plans proposed by farmers in chapter 11 may be found to be feasible and confirmable. *See In re Martin*, 66 B.R. 921 (Bankr.D.Mont.1986); *Matter of C & P Gray Farms, Inc.*, 70 B.R. 704 (Bankr.W.D.Mo.1987).

Mr. Cheatham testified that the debtors' living expenses are paid from Mrs. Cheatham's salary from Northern Telecom, and that the $40,000 annual payment will come from the farming operation.

The Cheathams' disclosure statement contains the following income projections from farming:

| Annual Projected Income | Amount |
| --- | --- |
| Sales of Tobacco | $51,000 |
| Sale of Horses | 10,000 |
| Sale of Cucumbers, Soy Beans, Hay, and other miscellaneous crops | 10,000 |
| TOTAL | $71,000 |

| Annual Projected Expenses | Amount |
| --- | --- |
| Rent | $ 6,000 |
| Curing | 6,000 |
| Labor | 4,000 |
| Fertilizer, Seed, Feed, and Pesticides | 12,000 |
| Miscellaneous | 3,000 |
| TOTAL | $31,000 |
| **Annual Projected Net Income** | **$40,000** |

---

2. CCB voted to reject the plan, but the court has ruled that CCB has a § 507(b) priority claim which will be paid in full on the effective date of the plan.

3. The Eighth Circuit may have reduced the feasibility requirements of *In re Clarkson* in *In re*

*Ahlers*, 794 F.2d 388, 392 (8th Cir.1986), *cert. granted*, ─ U.S. ─, 107 S.Ct. 1279, 97 L.Ed.2d 733 (1987), by holding that feasibility must be determined based on circumstances as they exist at the time of confirmation.

Mr. Cheatham has testified that he has 18 acres of tobacco which, at $1.70 per pound for 32,000 pounds, would gross $54,-000. He also testified that his 50 acres of soy beans would gross $5,000, that he would use his hay to feed his 19 horses, and that the horses could be sold for $900 each in the spring. Mr. Cheatham also testified that all expenses to date associated with the 1987 crop have been paid by non-reimbursable contributions from family members.

FLB argues that Mr. Cheatham had a net loss in 1985 of $19,303[4] and only a modest profit in 1986 of $8,623. FLB maintains that these figures demonstrate the debtors' inability to make payments of $40,-000 a year. Mr. Cheatham, however, says that in 1985 and 1986 his gross income suffered as a result of a severe drought and that in previous years his income and cash flow have been substantially higher. He also points to the fact that, despite his low income in 1986, he was able to pay over $55,000 to his creditors—a $40,000 adequate protection payment to FLB, a $3,000 payment each to GMAC and John Deere, and property taxes to Granville County. The reason he could make these payments was the financial help he received from his four adult children.

It has been held that "as a general proposition, gratuitous payments to a [chapter 13] debtor by his relatives do not constitute regular income." *In re Campbell*, 38 B.R. 193, 196 (Bankr.E.D.N.Y.1984). There are circumstances, however, when family contributions may be reliable enough to be considered. *Id.*, at 196; *In re Cohen*, 13 B.R. 350 (Bankr.E.D.N.Y.1981). Mr. and Mrs. Cheatham have three sons and a daughter who have contributed funds since the filing of the bankruptcy petition to enable the debtors to make payments and to plant crops. The court was particularly impressed by the testimony of Mr. and Mrs. Cheatham's 26 year old son, Greg Cheatham. Greg earns approximately $32,000 per year in Jupiter, Florida, as a dining room manager for a country club and as a landscaper. He has already given his family more than $10,000 since the filing of the petition and the court found convincing his testimony that he and his sister and brothers would make up any deficiency if the farm income is not sufficient to fund the $40,000 annual payment. The Cheatham's children are not wealthy, but they all have incomes and are willing to help their parents save the family farm.

■ It is true that Mr. Cheatham has suffered losses in his farming operation, but past losses do not automatically mean that a plan is not feasible. The debtors' projections of farm income are reasonable and even if the farm income falls short, the debtors will be able to make their $40,000 payment with the help of their children. The debtors' ability to fund the plan is not free from all doubt, but the court finds that the plan is feasible.

■ Because the court has reservations concerning feasibility, however, the court will exercise its broad discretion to delay the discharge until the debtors have paid the priority claim of CCB and have made the first $40,000 payment to the disbursing agent. A provision to that effect will be included in the order confirming the plan.[5]

### Good Faith

■ The debtors' compliance with the court's orders in this case has been less than exemplary. Nevertheless, the court cannot find that the plan was not proposed in good faith. When determining whether a plan is proposed in good faith, the court should consider a debtor's pre-filing conduct, *Neufeld v. Freeman*, 794 F.2d 149 (4th Cir.1986) (chapter 13 case), and there is no reason why post-confirmation conduct should not be considered as well.

In the debtors' petition, the obligation to CCB was intentionally omitted in the belief that the debtors' credit rating with CCB

---

**4.** These figures are included in the debtors' disclosure statement.

**5.** 11 U.S.C. § 1141(d) says that the discharge is effective upon confirmation "(e)xcept as otherwise provided in this subsection, in the plan, *or in the order* confirming the plan." (Emphasis added).

would not be affected. Furthermore, the debtors did not promptly comply with several court orders—the debtors did not timely procure hail insurance as required by an order entered on June 9, 1986 (see order of July 2, 1986); the debtors failed to timely pay Granville County taxes as required by an order entered on June 9, 1986 (see order of September 30, 1986); the debtors failed to sequester tobacco proceeds as required by an order entered on June 9, 1986 (see order of November 12, 1986); and the debtors failed to file monthly reports as required by the operating order entered on January 6, 1986 (modified on May 2, 1986, and reinstated on January 27, 1987) (see order dated April 23, 1987).

On April 23, 1987, the court entered an order which found that the debtors' case should not be converted to chapter 12 because of the debtors' inequitable conduct—that the debtors waited almost two years to file a chapter 11 plan, and their failure to comply with court orders.[6] It is this same conduct which FLB now says is the basis for a finding that the plan was not proposed in good faith. The court has considered the debtors' failure to timely comply with several court orders, but after considering the payments already made to FLB and the terms of the plan proposed, the court finds that the plan was proposed in good faith.

Mr. and Mrs. Cheatham have offered to pay $40,000 per year for six years. Their plan represents their best efforts for six years—more than is required in chapter 11 and more than would be required by the disposable income tests in chapter 13[7] and chapter 12.[8] The plan is an ambitious, yet attainable, effort by the Cheathams to save their farming operation. If the plan works, FLB will be paid in full, unsecured creditors will receive substantially more than if the property were liquidated today, and Mr. and Mrs. Cheatham will keep their farm. If it does not work, FLB, the only class not

to accept the plan, will have its collateral and will be paid.

Accordingly, an order will be entered substantially conforming to Official Form No. 31 confirming the debtors' plan.

---

**6.** If a debtor requests conversion from chapter 11 to chapter 12 the conversion must be "equitable." 11 U.S.C. § 1112(d)(3); the court did not rule on whether, even if the debtors' conduct was equitable, a chapter 11 case pending prior to the effective date of chapter 12 (November 26, 1986) could be converted to a case under chapter 12.

**7.** 11 U.S.C. § 1325(b).

**8.** 11 U.S.C. § 1225(b).