## In re Ashley CHERRY and Betty Cherry, Debtors.

### Bankruptcy No. 87 B 04882.

United States Bankruptcy Court, N.D. Illinois, E.D.

March 25, 1988.

---

John Ruddy, Ruddy, Myler, Ruddy & Fabian, Aurora, Ill., for debtors.

Richard L. Hirsh, Bashaw & Associates, P.C., Hinsdale, Ill., for CitiCorp.

## MEMORANDUM OPINION AND ORDER

RONALD S. BARLIANT, Bankruptcy Judge.

Ashley and Betty Cherry filed for protection under Chapter 11 of the Bankruptcy Code on April 1, 1987. A plan of reorganization was filed with the Court on September 1, 1987. An Amended Plan of Reorganization was filed by the Debtors on January 7, 1988. Only CitiCorp Savings and Loan, a secured creditor, has objected to the amended reorganization plan. The hearing on confirmation of the plan and CitiCorp's objection was held on February 9, 1988.

CitiCorp holds a first mortgage on the Debtor's primary residence. The present principal balance on the mortgage is approximately $94,394. The arrearage on the loan is approximately $50,031. CitiCorp and the Debtors entered an agreed order providing adequate protection to CitiCorp by requiring that current mortgage payments be made in the amount of $1,153 per month beginning in June, 1987.

The reorganization plan calls for payments of approximately $23,467 to CitiCorp each year until March 1, 1993 when the entire remaining balance of the arrears will be paid off. By the Court's calculation, the balance of the arrears in March of 1993 will be approximately $44,000. Balloon payments in 1993 will also retire a $60,000 debt to the Class III creditor (First National Bank of Joliet) and a $10,000 debt to the Class IV creditor (Aurora National Bank). Additional payments of approximately $7,909 each year will be made to the unsecured creditors, all of whom are receiving a 10% dividend under the plan. In addition to the payments specified under the plan, the Debtors will continue to be responsible for their general living expenses which include the support for Mr. and Mrs. Cherry and their ten year old son and all expenses associated with their fourteen room home and their automobile. The amount of these living expenses has not been specified.

The living expenses are to be paid out of two sources: Mrs. Cherry's income of approximately $600 per month and rental income of approximately $350 per month. This amount must be enough to cover food for three people, utilities for a fourteen room house, insurance for the house and one automobile, any employment or income taxes that may be due on such income and any miscellaneous expenses that arise during each month.

The payments specified in the plan will be made out of Mr. Cherry's salary from Providence Sod Farms, of which Mr. Cherry is a 50% shareholder and chief executive officer. Initially, Mr. Cherry indicated that his salary from the sod farm would be $24,000 per year. When it was pointed out that a $24,000 per year salary would be insufficient to cover the payments of $31,376 under the plan, Mr. Cherry testified that his salary would be increased to cover the deficiency.

Finally, the plan specifies that the 1993 balloon payments of $44,000, $60,000 and $10,000 will be made from the proceeds of Mr. Cherry's personal injury and workmen's compensation suit now pending in the Illinois courts. The suit arose from injuries Mr. Cherry sustained after falling through the doors of an abandoned Nike missile silo in 1985. Alternatively, if there are insufficient funds from the personal injury suit, the Debtors have proposed that

they sell their primary residence in 1993 to make the balloon payments.

CitiCorp objects to confirmation of the Debtors' amended plan of reorganization on two grounds. First, CitiCorp contends that the plan is not feasible and therefore may not be confirmed under 11 U.S.C. § 1129(a)(11). CitiCorp claims that feasibility is at best tenuous, in part because the Debtors' ability to make the 1993 balloon payments and pay their litigation expenses is dependent on the Debtors recovering over $170,000 in the personal injury case. Second, CitiCorp has raised questions about the Debtors' good faith in proposing the reorganization plan in light of the Debtors' failure to apply a $38,000 gift to the mortgage arrears.

Confirmation of the Debtors' plan of reorganization is denied because the Court cannot find that, "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor." 11 U.S.C. § 1129(a)(11).

*Good Faith:*

 A confirmable reorganization plan under Chapter 11 of the Bankruptcy Code must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Good faith is not given a specific definition under the Code, but it is generally held that good faith exists "when there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Nite Lite Inns*, 17 B.R. 367, 370 (Bankr. S.D.Cal.1982), *Matter of Nikron, Inc.*, 27 B.R. 773, 778 (Bankr. E.D.Mich.1983). The question of good faith should therefore focus on whether the reorganization plan is capable of confirmation. *Id.* Chapter 11 contemplates rehabilitation of the Debtor without destruction of the bankrupt's estate and with protection of the creditors' rights. *In re Nite Lite Inns*, 17 B.R. at 370.

CitiCorp claims that the use of funds to purchase irrigation equipment for Providence Sod Farms in 1986 instead of using the funds to retire the mortgage arrears constitutes bad faith when the Chapter 11 petition was filed only three days prior to the hearing on summary judgment for foreclosure.

Mr. Cherry testified that his parents gave him $38,000 for the express purpose of investing in the sod farm enterprise. There has been no showing that Mr. Cherry's parents would have given him the $38,000 to pay the CitiCorp arrearage or that he could have used the money for that purpose without violating the condition of the gift.

Further, CitiCorp misses the focus of the good/bad faith considerations. The focus should be on the plan. It is true that bad faith may be found if the bankruptcy petition is filed merely as a means to stall foreclosure proceedings. *In re Langguth*, 52 B.R. 572 (Bankr. N.D.Ill.1985). Still, a realistic plan that would protect the creditors' rights and provide sufficient payments to the creditors may still be proposed in good faith regardless of the timing of the petition's filing. The facts presented by CitiCorp are not sufficient to convince this Court that the plan was proposed in bad faith.

*Feasibility:*

A plan of reorganization under Chapter 11 is confirmable only if all requirements of § 1129(a) are met. Section 1129(a)(11) requires that "[c]onfirmation of the plan is not likely to be followed by liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

Satisfaction of the feasibility requirement has generally required some reasonable expectation of success. *In re White*, 41 B.R. 227 (Bankr. M.D.Tenn.1984). In the case at bar, the ultimate success of the reorganization plan depends on the relative success of two intermediate endeavors. First, Providence Sod Farms must experience moderate success over the next five years and provide Mr. Cherry with income sufficient to pay the $31,376 per year to secured and unsecured creditors. Second, Mr. Cherry's personal injury suit must

yield a settlement or judgment within the next five years sufficient to cover the 1993 balloon payments and any costs of the litigation. The Debtors have not contended that extraordinary success of the sod farm will yield sufficient accumulated income in 1993 to retire the debts without recourse to proceeds from the personal injury suit. Therefore, reasonable expectations of success must be established independently for both operation of the sod farm and favorable judgment or settlement of the personal injury action.

The Court will first consider the feasibility of the plan in light of Providence Sod Farms' operations. When examining the feasibility of a business operation the Court should consider the adequacy of the capital structure, the earning power of the business, the economic conditions, the abilities of management, the continuity of the present management, and other matters which determine the prospects of a sufficiently successful business operation. *In re Clarkson*, 767 F.2d 417 (8th Cir.1985). The plan must "offer[] a reasonable prospect of success and [be] workable ... Success need not be guaranteed." *In re Monnier Bros.*, 755 F.2d 1336, 1341 (8th Cir. 1985) (quoting *United Properties Inc. v. Emporium Department Stores, Inc.*, 379 F.2d 55, 64 (8th Cir.1967)).

Providence Sod Farms sustained a loss of approximately $24,000 in 1987. For 1988, a pre-tax profit of $61,000 has been forecast. The 1988 projections are based primarily on one contract to sell 50,000 yards of sod in the spring of 1988 and a non-binding option to sell an additional 50,000 yards of sod in 1988. A total of 200,000 yards of sod must be sold in 1988 to meet the financial projections. The evidence does not indicate that periodic sales of sod will cure the cash flow problems which plagued the Debtors in prior years, even if total sales for 1988 reach the 200,000 yards projected. The projections provide for total salaries of approximately $66,000. Mr. Cherry must draw a $31,376 salary just to meet the plan payments. This is an addition of approximately $8,000 over his originally budgeted $24,-000 salary. There is no indication where the additional funds will come from. Also, the projections make no provision for corporate income and employment taxes which will divert funds otherwise available to pay Mr. Cherry's increased salary.

In *In re Cheatham*, 78 B.R. 104 (Bankr. E.D.N.C.1987) the Debtor's farming business sustained a loss two years prior to the proposal of reorganization. Prior years losses do not, in and of themselves, make a reorganization plan speculative. In fact, bankruptcy courts have approved numerous plans which based the future success of business operations on the value of new projects and markets. *See, e.g., In re White*, 41 B.R. 227 (Bankr. M.D.Tenn.1984). Nevertheless, in both *Cheatham* and *White* the Debtors provided more concrete evidence of financial progress than the Debtors provide here. In both cases, the Debtors had been in business for years. Here, Mr. Cherry proposes that the creditors gamble on a new business with only one year of operation, which produced a loss. In *Cheatham*, there were assurances of family support. In *White*, the plan included projected income from the subdivision of real estate and there was more evidence of a business turnaround than there is here. The evidence presented by the Debtors has not impressed the Court that the necessary success of Providence Sod Farms can be accomplished as a practical matter. The Court therefore finds that the reorganization plan, to the extent it depends on the success of the sod farm, does not meet the feasibility requirement of § 1129(a)(11).

The Debtors' plan also requires that the personal injury action produce a settlement or judgment within the next five years which is sufficient to cover the balloon payments due at that time. At the hearing on confirmation, the Debtors produced a personal injury attorney as an expert witness. The witness stated that there were serious questions as to liability and that the value of the law suit ranged from $25,000 to $450,000. The witness also stated that the case may not come to trial before 1992 and that Mr. Cherry may well lose the case.

Projections of the income necessary to finance a plan of reorganization must be based on concrete evidence of financial progress and must not be speculative, conjectural or unrealistic. *In re Merrimack Valley Oil Co.*, 32 B.R. 485, 488 (Bankr. Mass.1983). The record provides no basis for determining that there is anything other than a speculative chance of a $170,000 recovery in Mr. Cherry's lawsuit. There is certainly no concrete evidence of the lawsuit's favorable progress through the Illinois court system.

In *In re Hoffman*, 52 B.R. 212 (Bankr.D. N.D.1985) the Debtor's reorganization plan called for the sale of certain real estate within two years after the plan's confirmation. The Bankruptcy Court found no evidence that the parcels would be sold as contemplated by the plan and therefore the plan was found not to be feasible. Similarly, this Court is not satisfied that the prospects of the personal injury suit's favorable settlement or judgment are sufficiently concrete to justify the confirmation of a reorganization plan based on such a favorable result.

 Nevertheless, the Debtors have stated that their primary residence will be sold in 1993 to enable them to make the required balloon payments under the plan if there are insufficient funds from the personal injury action. Although the plan does not specifically provide for such a sale, the Debtors state that the plan is in part a liquidating plan. As such, they contend that feasibility is not a prominent consideration in this case. The Debtors emphasize that the feasibility requirement of § 1129(a)(11) contemplates that liquidation or further reorganization is not likely after confirmation *"unless* such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11) (emphasis added). Since sale of the primary residence is an alternative method to fund the balloon payments in 1993, the Debtors argue that the Court's focus should not be on the potential success of the personal injury action. Instead, the Debtors contend that the Court must confirm the plan as a matter of law.

A Chapter 11 plan which provides for liquidation of the debtor's main asset if the debtor defaults on the payment scheme proposed by the plan, may be confirmed over the objection of secured creditors if the value of the asset is sufficient to retire all debts. *In re Nite Lite Inns*, 17 B.R. 367, 370 (Bankr.S.D.Cal.1982). There has been testimony that the Debtors' home is presently worth $245,000. There is no evidence that the house and its surrounding five acres are depreciating assets. The total debts remaining in 1993 will be approximately $215,000. This amount includes the principal balance of the CitiCorp mortgage, the arrears on that mortgage and the debts owed to Class III and IV creditors. It appears that liquidation of the Debtors' primary residence will provide enough cash to retire the outstanding debts.

Still, contrary to the Debtors' post trial brief, the amended plan of reorganization does not specifically provide for sale of the house and adjoining land if the personal injury action does not provide funds sufficient to make the balloon payments. Also, unlike *Nite Lite Inns*, the plan does not provide that this Court retain jurisdiction over implementation of the plan so that the sale could be supervised by the Court. Although the Debtors' profess their intention to liquidate if necessary, there is nothing to enforce the liquidation and protect the creditors in 1993 if there are no other funds to make the payments. Article XII of the amended plan, which merely permits the Debtors to sell their assets and apply the proceeds to plan payments, is insufficient. The Court must conclude that the feasibility requirement of § 1129(a)(11) has not been met by the reorganization plan in its present form.

Accordingly, IT IS ORDERED:

That confirmation of the Debtors' Amended Plan of Reorganization filed on January 7, 1988 is DENIED.