In re Richard C. STIGLIANO, Jr., Debtor.

No. 11–10012–TPA.

United States Bankruptcy Court, W.D. Pennsylvania.

Nov. 19, 2012.

David Z. Valencik, Donald R. Calaiaro, Calaiaro & Corbett, P.C., Pittsburgh, PA, for Debtor.

Joseph M. Fornari Jr. on Behalf of the United States Trustee, Pittsburgh, PA.

### MEMORANDUM ORDER

THOMAS P. AGRESTI, Chief Judge.

On November 1, 2012, a hearing was held on confirmation of the Debtor's *Third Amended Chapter 11 Plan dated June 15, 2012,* Document No. 104 ("Plan") and an *Amended Objection* filed by the Hitachi Capital America Corp. ("Hitachi"), Document No. 114. At the hearing, the Debtor and Hitachi reported that they had resolved the Hitachi *Objection* in such a manner that will benefit all unsecured creditors and would be reducing their agreement to a written Stipulation. The Court has not yet seen such Stipulation, but according to the Parties it will result in Hitachi changing its vote to an acceptance of the *Plan,* which would mean that the only voting impaired class of creditors, Class 8 General Unsecured, will approve the *Plan*.[1] Thus, assuming the anticipated Stipulation with Hitachi is ultimately filed and approved by the Court, the only remaining impediment to plan confirmation is for the Debtor to meet his burden of proving that the *Plan* complies with the statutory requirements for confirmation under *11 U.S.C. § 1129.*

At the hearing, the Court noted that it was troubled by what appeared to be excessive monthly expenses by the Debtor set forth as an exhibit to his *Disclosure Statement,* as were also identified in the Hitachi *Objection,* calling into question whether the Debtor would be contributing his entire "disposable income" to the *Plan* as required by *11 U.S.C. § 1129(a)(15)(B).* The Court indicated that it agreed with the Hitachi *Objection* in that regard, i.e., expenses such as, for example, $650 per month for a Volvo which is the third vehicle of the Debtor's family, $1500 per month for "groceries/dinners," $300 for recreation, $225 for yard care, and $150 for XM radio, do not appear to be reasonably necessary or are excessive. Were such expenses eliminated or reduced, there would be additional funds to devote toward payment of unsecured creditors. In fact, after reviewing the entire record in this case, it appears as if the lifestyle of the Debtor has actually improved postpetition over that of an already somewhat lavish prepetition lifestyle. Also raised in the Hitachi *Objection* was the issue of whether the Plan complies with the "absolute priority rule."

The Debtor appeared to take the position that a resolution of the Hitachi *Objection* would obviate any question about the reasonableness of the expenses vis-a-vis the requirement of *Section 1129(a)(15)(B),* or the absolute priority rule, thereby mooting the Court's concerns. The Court disagrees for several reasons. First, the Debtor's argument remains in the speculative category because the Court still has not seen any evidence of a written stipulation even though the confirmation hearing occurred two weeks ago. Consequently, the Hitachi *Objection* remains pending.

---

[1]. Prior to the agreement with Hitachi, the vote in Class 8 was Ameriserv Financial Bank ($205,636.28) accept, Hitachi ($550,000) reject, and PHT Lakeview, LLC ($446,618.22) reject.

Second, even assuming the Hitachi *Objection* has been resolved, it is by no means clear that this would cause the *Section 1129(a)(15)(B)* requirement to simply evaporate. *Section 1129(a)(15)* contains the following preface:

In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—

The Debtor appears to take the position that a resolution of the Hitachi *Objection* would mean that this preface is no longer met and therefore the requirement under *Section 1129(a)(15)(B)* does not apply.

That is certainly one plausible construction to put on this provision, though not the only one. It might also be construed in such a fashion that the filing of an objection is a trigger for the requirement and any subsequent disposition of the objection does not undo that requirement once triggered. The Debtor has not cited any case in support of his construction of the statute, not did the Court find any in brief research. The legislative history behind this provision, which was added by the *Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, does not shed light on the proper construction.

■ It may be that the "once triggered—not undone" construction is more in keeping with the longstanding view that the Court has an independent duty to satisfy itself that the requirements of *Section 1129* have been met before confirming a plan. "The court has a duty to examine the plan and determine whether or not the plan conforms to the requirements of 11 U.S.C. § 1129, regardless of whether objections are filed." *In re White,* 41 B.R. 227, 229 (Bankr.M.D.Tenn.1984). *See also, In re Trenton Ridge Investors, LLC,* 461 B.R. 440, 458–59 (Bankr.S.D.Ohio 2011) (citing cases); *In re H.H. Distributions, L.P.,* 400 B.R. 44, 50 (Bankr.E.D.Pa.2009).

"In calculating an individual Chapter 11 debtor's projected disposable income, *§ 1129(a)(15)(B)* must be read to allow a judicial determination of the expenses that are reasonably necessary for the support of the debtor and his or her dependents." *In re Roedemeier,* 374 B.R. 264, 272–73 (Bankr.D.Kan.2007). The Court has not reached a final conclusion on the question whether a withdrawn objection can "untrigger" the requirement that a plan in an individual Chapter 11 case must comply with *Section 1129(a)(15)*. It will hold off in doing so until further evidence has been presented, and at least until the claimed stipulation is filed.

■ A third reason for disagreeing with the Debtor's position is that there is no disputing that, in any event, the Court must find that the Plan is proposed in good faith pursuant to *Section 1129(a)(3)*. "Although the Code does not define 'good faith' in the context of § 1129(a)(3), [the Third Circuit Court of Appeals has] stated that 'for purposes of determining good faith under section 1129(a)(3) ... the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'" *In re Pittsburgh Corning Corp.,* 453 B.R. 570, 604 (Bankr.W.D.Pa.2011) (citing *In re Combustion Eng'g, Inc.,* 391 F.3d 190 (3d Cir.2004)). It may well be that potentially excessive expenditures by the Debtor during the Plan period, when unsecured creditors are being paid only a small fraction of their claims, is a relevant factor in the good faith inquiry, even if *Section 1129(a)(15)* is found not to apply because the Hitachi *Objection* has been resolved.

A final reason for the Court's disagreement with the Debtor's position is that it overlooks the fact that the absolute priority rule issue was also raised. There is currently a lively dispute among the courts as to whether this rule applies in individual

Chapter 11 cases post *BAPCPA.* *See, In re Lee Min Ho Chen,* 482 B.R. 473 (Bankr. D.P.R.2012) (citing cases for both views.) If it is determined that the rule does apply, the Court believes it has a duty to determine whether the Debtor's Plan meets the rule, even if the Hitachi *Objection* is resolved.

To sum up, the Court's initial view is that the Debtor in the present case is claiming excessive expenses and not dedicating all of his projected disposable income to funding of the proposed *Plan,* thereby exhibiting a lack of good faith in even proposing the *Plan.* In order to allow the Debtor an opportunity to convince the Court otherwise, the *Plan* confirmation hearing will be continued one final time and an evidentiary hearing set. The Debtor will be given an opportunity to "sharpen the pencil" and provide information demonstrating good faith, the reasonableness of his expenses, and whether he is dedicating all of his projected disposable income to fund the *Plan.* Any proposed Stipulation between the Debtor and Hitachi will also be reviewed at this hearing.

*AND NOW,* this *19th* day of *November, 2012,* for the foregoing reasons it is hereby *ORDERED, ADJUDGED and DECREED that:*

(1) A continued hearing on confirmation of the Debtor's *Third Amended Chapter 11 Plan dated June 15, 2012,* is set for *December 10, 2012 at 10:00 A.M.* in Courtroom C, 54th Floor, U.S. Steel Tower, 600 Grant Street, Pittsburgh, Pa. 15219. At the hearing the Debtor:

(A) *Richard C. Stigliano, Jr.,* shall *personally* appear at the date and time set for the hearing identified above.

(B) Will be given an opportunity, *on or before December 3, 2012,* to revise his projections as to available disposable income to fund the Plan.

(C) Will be required to provide *on or before December 3, 2012,* the Court

with any additional income and expense calculations/itemizations he wishes the court to consider, and file a list of witnesses intended to be called and exhibits to be presented. See Judge Agresti's Procedure's at www.pawb.uscourts.gov/tpa-proc. htm relating to presenting exhibits to the Court prior to the hearing.

(2) No amended plans and related documents are to be filed by any Party until further Order of Court.

(3) *On or before November 23, 2012,* the Debtor shall serve this Order on all interested parties and file a *Certificate of Service.*

(4) *On or before December 3, 2012,* any Party other than Debtor planning to participate at the hearing shall file a list of witnesses and exhibits it intends to present. See Judge Agresti's Procedure's at www.pawb.uscourts.gov/tpa-proc.htm relating to presenting exhibits to the Court prior to the hearing.