In the Matter of NAUGLE'S NURSERY, INC., Debtor.

In the Matter of STIRLING ROAD NURSERY, INC., Debtor.

Bankruptcy Nos. 82–02118–BKC–SMW, 82–02116–BKC–SMW.

United States Bankruptcy Court, S.D. Florida.

March 9, 1984.

Chad P. Pugatch, Fort Lauderdale, Fla., for debtor.

Marilynn Koonce, Asst. U.S. Atty., Miami, Fla., for Farmers Home Administration.

## ORDER CONCERNING REQUEST FOR CONFIRMATION PURSUANT TO 11 U.S.C. § 1129(b)

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on to be heard on February 22nd and 23rd, 1984, for an evidentiary hearing upon the Debtors' request for confirmation of the Plans of Reorganization filed herein, notwithstanding the failure of the major secured creditor, The Farmers Home Administration of the United States of America, to accept the Plans as modified.

The Debtors herein, NAUGLE'S NURSERY, INC. and STIRLING ROAD NURSERY, INC., are related businesses engaged in the wholesale nursery trade. The cases, which were filed on the same date, were not consolidated. However, the Plans, which are interrelated, were filed on the same date and the confirmation procedure as to each Plan has been handled simultaneously. The Farmers Home Administration is the major secured creditor of each of the two Debtors and rejected the Plans in each of the two cases. The issues being identical, the hearing concerning the request for confirmation as to each of the cases has been heard together and will be treated together herein.

The Debtors' Plans originally came on for confirmation on February 1, 1984. At that time, the Debtors had the requisite votes of each class of creditors, and had otherwise met the requirements for confirmation of the Plans of Reorganization, with the exception of the rejection filed by the Farmers Home Administration, a secured creditor in each of the cases, by virtue of secondary mortgage positions on the Debtors' real property totalling approximately $4,388,-000.00 in principal and accrued interest to date. There was also an objection raised by the Internal Revenue Service concerning the failure of the Plans to state that interest would be paid on the outstanding tax obligations. The Plans were modified in open court by the Debtors to provide for payment of interest at 11.7% in order to cure the objections raised by the Internal Revenue Service.

At a continued confirmation hearing, the Debtors modified again, in open court, the Plans to reduce the original thirty-year projected payout to the Farmers Home Administration to a Plan which would pay off the entire outstanding indebtedness in a total of fourteen years, bringing past due and accruing interest current over the first eight years of the Plan and then providing for an equal amortization of principal and interest at the contract rate over the last six years of the Plan. The Debtors further offered, in addition to leaving the existing mortgage liens intact, to provide the Farmers Home Administration with additional security over the life of the Plan through a lien on the Debtors' inventory, valued at $1,750,000.00 at wholesale, as of year-end, 1983. This modification was rejected by the Farmers Home Administration as well and the Debtor then requested confirmation notwithstanding the failure of this secured class of creditors to accept the Plans pursuant to the provisions of 11 U.S.C. § 1129(b).

The Bankruptcy Code provides in 11 U.S.C. § 1129(b) for confirmation of a Plan of Reorganization where all applicable requirements of subsection (a) are met with the exception of paragraph (8) requiring the acceptance of each class of impaired creditor, so long as the Plan does not discriminate unfairly, and is fair and equitable with respect to each class of impaired claims not accepting the Plan. Subsection (2)(A) defines the fair and equitable standard as to secured claims and provides that this standard is met in cases where the holder of such claims retains the lien securing the claims and said creditor further receives

deferred cash payments totalling at least the allowed amount of the claim with a value as of the effective date of the Plan of at least the value of such holder's interest in the estate's interest in the property, or for the realization by the creditor of the indubitable equivalent of its claims. The Court should confirm a Plan pursuant to 11 U.S.C. § 1129(b) notwithstanding the lack of acceptance by a creditor secured by mortgages on real property where these standards are met. *See, In Re: Patel,* 21 B.R. 101 (Bkrtcy.M.D.Fla.1982).

The Plans in the instant cases unquestionably provide for the retention of the lien positions of the dissenting secured creditor. The Plans provide, in fact, for additional valuable security to be granted to the creditor in exchange for the time payments requested under the Plans. The Plans further provide for the payment of all principal and interest at the contract rate to said creditor during the life of the Plan, thus satisfying the remaining requirements of subsection (2)(A). *In Re: Patel, supra,* at 104, 105.

The uncontroverted evidence presented by the Debtors establishes that the value of the Debtors' real property is approximately equal to the amounts owed to the Farmers Home Administration. While the existence of approximately $500,000 in senior mortgages on the subject property creates a possible deficit in equity, the additional security offered by the Debtors in the plant inventory more than adequately protects the creditor in maintaining its equity position throughout the life of the Plan. The Debtors presented detailed projections concerning completion of the nurseries to capacity and increases in inventory and sales which, when measured against the projected 30% gross profit, testified to be a reasonable standard in the industry, establishes the capacity of the Debtors to live up to the payment schedule proposed herein. Moreover, the payments to senior mortgagees during the course of the Plan will increase the equity position of the Farmers Home Administration.

The Farmers Home Administration has objected to the extended payment schedule provided in the Plan. These loans, made at varying interest rates averaging approximately 7½% interest were originally granted for periods of three, five and in some cases seven years. However, the Court notes that the regulations of the Farmers Home Administration, which were introduced into evidence, allow for payment schedules exceeding the time frame proposed by the Debtors where, in fact, the loans are secured by real property.

The Farmers Home Administration has expressed concern over the ability of the Debtors to generate sufficient income to meet the payment schedule provided in the modified Plans. However, no competent evidence was put on by the Farmers Home Administration to contradict the Debtors' projections and evidence concerning this matter. The Court also notes that the testimony establishes the Debtors' income levels now to be in excess of the figures presented to the Farmers Home Administration when these loans were originally granted, with expectations that the Debtors could make repayment in a much shorter time frame.

The Debtors herein having met their burden of proof under 11 U.S.C. § 1129(b), the Court specifically finds that the Plans, as modified, do not discriminate unfairly against the Farmers Home Administration and are fair and equitable as to this class of secured creditors. The Court, in making this determination, is not unmindful of the fact that these loans originated as a form of disaster relief. The role of the Farmers Home Administration in loans of this type has been described as a combination of business policy and "social welfare legislation" and the actions of the Court should be tempered with this consideration. *See, ex, Curry v. Block,* 541 F.Supp. 506 at 509 (D.C. S.D.Ga.1982). These Debtors, which have made a concerted effort to reorganize and pay 100% of the outstanding indebtedness should be given the opportunity to reorganize and the Plans, as modified, should be confirmed by the Court. As per the schedule introduced into evidence herein, the

Farmers Home Administration shall be paid all accrued and accruing interest in eight annual installments commencing no later than December 31, 1984, and continuing upon the schedule set forth in the exhibit introduced at the hearing through December 31, 1991. Commencing at that time, all principal and interest shall be liquidated in six equal amortized yearly installments commencing no later than December 31, 1992, and continuing through December 31, 1997. All interest shall accrue and be payable at the contract rates stated in each of the notes and mortgages involved. The Debtors shall provide to the Farmers Home Administration, at its request, and upon documentation prepared by it, subject to the Court's approval, a security interest in the inventory of the Debtors.

Separate confirmation orders shall be entered by the Court in conformity with the Findings and Conclusions herein.