**In re Lawrence W. MANION d/b/a Paperhanging by Lawrence; Dorothy E. Manion, d/b/a Manion Group Home, f/d/b/a Gilchrist Farms, Debtor(s).**

**Bankruptcy No. 90–00122.**

United States Bankruptcy Court,
N.D. Florida,
Gainesville Division.

March 26, 1991.

Sharon T. Sperling, Gainesville, Fla., for Barnett Bank.

Lisa Cohen, Keystone Heights, Fla., for debtor.

## ORDER ON MOTION FOR CONFIRMATION

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

This matter is before the court on the motion of the debtors-in-possession, Lawrence & Dorothy Manion for confirmation of their Chapter 11 plan of reorganization pursuant to the provisions of § 1129(b) of the Bankruptcy Code also known as "cramdown". A hearing on confirmation of the debtors' plan was conducted on February 7, 1991 at which time the debtors established to our satisfaction compliance with all of the confirmation requirements as set forth in § 1129(a) of the Code except for that contained in § 1129(a)(8) which requires acceptance of the plan by each impaired class. Barnett Bank of Alachua County, the holder of a secured claim which is impaired under the plan has voted to reject the plan and has filed an objection to confirmation. The issue presented here is whether the plan as proposed by the debtors-in-possession is "fair and equitable" with respect to Barnett Bank's claim as that term is used in § 1129(b)(1).

The debtors, Lawrence and Dorothy Manion, filed their petition for relief under Chapter 11 on May 7, 1990. The debtor, Lawrence Manion is in business as a paperhanger under the name Paperhanging by Lawrence and Dorothy Manion operates a group home for the mentally retarded known as Manion Group Home. Barnett is the holder of the first mortgage on the group home with a claim in the amount of approximately $56,000. The only evidence of value of Barnett's security was the testimony of Dorothy Manion that the home has a value of $57,000 or $58,000 thus making Barnett a fully secured creditor.

The note to Barnett which is secured by the group home provides for monthly payments in the amount of $640.00 each commencing September 10, 1987, at an interest rate of 12% per annum with a balloon payment due on September 10, 1992. The note is a commercial promissory note with a twenty (20) year amortization and the five (5) year balloon. Pursuant to the debtor's plan of reorganization, Barnett's claim will be amortized over a twenty (20) year period at the same 12% interest rate but with no balloon payment due. Conversion of this five (5) year balloon note into a twenty (20) year note is the provision that Barnett has objected to.

At the hearing, Barnett presented the testimony of Bob Cameron, Barnett's vice president for commercial real estate loans who testified that the normal lending practices of Barnett and other lenders in the community with respect to commercial loan terms was that loans would be made normally with a twenty (20) year amortization and a five (5) year balloon. Interest rates would normally be indexed to prime and would normally be between 1.5 and 2.0% over prime. As of the date of hearing, prime stood at 9%.

In support of confirmation, Mrs. Manion testified that she has been operating the group home for nineteen (19) years. She operates the home under a contract with the State of Florida, Department of Health and Rehabilitative Services (HRS) which provides monthly reimbursement to her based on the number of residents in the house. The contract is renewed annually and there is nothing to guarantee each year that it will in fact be renewed. Her ability to make mortgage payments is dependent upon being able to operate the home under the HRS contract. The home itself was built in 1955 and is thus over 35 years old. Mrs. Manion is currently 49 years old. The plan and the budget as presented by the debtors does not provide for any reserves for maintenance or replacement of items such as appliances or roof in the home.

■ The pertinent portions of § 1129 of the Bankruptcy Code provide:

(b)(1) Notwithstanding § 510(a) of this Title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court on request of the proponent of the plan shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interest that is impaired under, and has not accepted the plan.

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements: (A) with respect to a class of secured claims, the plan provides—(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totalling at least the allowed amount of such claim, of a value as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

This requirement is met where the dissenting claimant receives payment in full over a reasonable period of time with an appropriate interest or discount factor being paid. *In re White,* 36 B.R. 199 (Bkrtcy.D. Kan.1983) citing *In re Hollanger,* 15 B.R. 35 (Bkrtcy.W.D.La.1981).

■ In this case, the interest rate proposed by the debtors is 12% whereas the testimony of Barnett's loan officer establishes that commercial loans would currently be made at an interest rate between 10½ and 11%. Accordingly, we find that the plan does provide an appropriate discount factor.

■ Turning now to the question of whether the debtor's proposed treatment of Barnett's note is "fair and equitable", the court finds the plan of reorganization, as it stands, does not treat Barnett's note in a "fair and equitable" manner. To be "fair

and equitable" under § 1129(b)(1) a plan must be literally fair and equitable. *In re EFH Grove Tower Associates*, 105 B.R. 310, 313 (Bkrtcy.E.D.N.C.1989). Section 1129(b)(2) sets *minimal* standards that the plan must meet. *In re D & F Construction Inc.*, 865 F.2d 673, 675 (5th Cir.1989). The Fifth Circuit went on to hold:

> technical compliance with all the requirements in § 1129(b)(2) does not assure that the plan is 'fair and equitable' ... A court must consider the entire plan in the context of the rights of the creditors under state law and the particular facts and circumstances when determining whether a plan is 'fair and equitable'. *Id.*

Therefore, "[a] plan may meet the standards of 11 U.S.C. § 1129(b)(2) and still be nonconfirmable." *In re EFH Grove Tower Assoc.* at 313, *citing, In re D & F Const. Inc.*, at 675; *In re Cheatham*, 78 B.R. 104 (Bkrtcy.E.D.N.C.1987), *aff'd* 91 B.R. 377 (E.D.N.C.1988).

■ Although this court did hold in *In re O'Farrell*, 74 B.R. 421, 424 (Bkrtcy.N.D. Fla.1987) that loans secured by real estate are frequently made for terms of thirty (30) years and that such time was reasonable in that case, the *O'Farrell* case is distinguishable from the present case. In *O'Farrell* the loan in question was secured by a mortgage on a farm on which the debtors lived and worked. In the present case, Barnett's note is secured by a mortgage on commercial property. The reasonableness of the terms of loan secured by commercial property is different than the reasonableness of the terms of a loan secured by a farm.

It has been consistently held that § 1129 does not per se prohibit long term payouts. *In re White*, 36 B.R. 199, 203 (Bkrtcy.D. Kan.1983); *In re Hollanger*, 15 B.R. 35 (Bkrtcy.W.D.La.1981); *In re Benson*, 9 B.R. 854 (Bkrtcy.N.D.Ill.1981); *In re Cabana Club Apts., Inc.*, 455 F.2d 841 (4th Cir.1972). Section 1129(b) requires that the dissenting claimant receive full payment over a *reasonable* period of time. *In re Hollanger*, 15 B.R. 35, 47 (Bkrtcy.W.D.La. 1981). In this light it is clear the Bankruptcy Code allows the restructuring of debts through extensions only on a *reason-able* basis. *Id.* The debtor's proposed plan does not meet this "reasonable" requirement.

There are obvious pitfalls with plans proposing long term payouts. In *In re 750 Ave. Assoc.*, 5 BCD 368 (Bkrtcy.S.D.N.Y. 1979) the debtor attempted to extend a mortgage over twenty (20) years. The court held:

> There is nothing in the record here to indicate that this debtor ... will have the wherewithal to retire its debt to the bank in twenty years.... Clearly such a proposed arrangement ... would impermissibly allow the debtor to speculate with the Bank's funds. 5 BCD at 371.

Similarly, the court in *In re Country Green Ltd. Partnership*, 3 BCD 427 (Bkrtcy.W.D.Va.1977) rejected a thirty (30) year extension because the court felt the plan would allow the debtor to speculate with the secured creditor's money. In the case *In re KRO Assocs.*, 4 BCD 462 (Bkrtcy.S.D.N.Y.1978), the court held that payments over longer periods of time require stricter proof by the debtor of feasibility of the plan and adequate protection of the creditor. Taking this approach to the present case, we cannot allow the debtor to speculate with Barnett's money for such a long period of time given the specific type of loan and security involved.

Barnett's vice president for commercial real estate loans testified that it is the normal practice and lending procedures of banks making commercial loans to amortize the loans over twenty (20) years and provide for a balloon payment due in five (5) years. This testimony was not challenged by the debtors. Furthermore, the viability of the group home relies almost solely on HRS renewing the contract with the debtor's group home, which the debtors cannot guarantee. The court cannot overlook the fact that this contract is annual and the possibility of HRS not renewing the contract at some point over the next twenty (20) years is not far-fetched. Should the contract lapse it is doubtful that the group home could produce sufficient income to pay the mortgage to Barnett. There is no evidence the group home will be in operation for the next twenty (20) years, even if it were, Mrs. Manion would

be 69 years old. Also a factor in the court's decision is the fact that there is a minimal equity cushion, less than $2,500, in the property and although the real estate markets may presently be depressed, the home is over 35 years old and vast appreciation in the property seems unlikely. As the District Court for the Middle District of Georgia stated years ago:

> The debtor's plan of arrangement is wholly speculative. The debtor can be enthusiastic about tomorrow, today; but that is not sufficient. Ideas are noble, but it is mind boggling to think of the potential hazards that are probable in the future which would prevent the execution of the plan. The seeds in an apple can be counted, but the apples in a seed cannot be counted. *In re Macon Uplands Venture*, 2 B.R. 429 (D.C.M.D.Ga. 1979).

Without more evidence that the debtor's group home will continue to maintain a contract with HRS, or other similar provider, and remain profitable, the court must find the treatment of Barnett's claim over twenty (20) years is not "fair and equitable" under § 1129(b)(1); therefore the plan as proposed is not confirmable.

While we find that a twenty (20) year payout is not reasonable, we do not feel that the terms must necessarily be those under which the bank normally does business. Given that the interest rate provided is higher that that normally charged and the past record of the group home, we would find a seven (7) year balloon to be reasonable. This would give the debtors adequate time to re-establish their creditworthiness in order to obtain new or rollover financing while at the same time giving the bank the protection of a balloon payment.

For the foregoing reasons, it is accordingly hereby

ORDERED AND ADJUDGED that the debtor's Motion Pursuant to Section 1129(b) for Confirmation is denied.

DONE AND ORDERED.