**In the Matter of John and Cathleen KENNEDY, Debtors.**

**Bankruptcy No. 92–12743.**

United States Bankruptcy Court, D. New Jersey.

Sept. 10, 1993.

Gary Dinenberg, for debtors.

Scott Sherman, Federman & Phelan, for Dominion Bancshares Mortg. Co.

## OPINION

JUDITH H. WIZMUR, Bankruptcy Judge.

Debtors John and Cathleen Kennedy seek confirmation of their Chapter 11 plan. The plan proposes to pay off a foreclosure judgment on their residence over a twenty year period, with interest. The holder of the foreclosure judgment, Dominion Bancshares Mortgage Company, ("Dominion"), objects to the plan.

Dominion acquired a purchase money mortgage on the debtors' residence in 1986. Debtors purchased the property in 1989 and assumed the mortgage. The initial principal due on the obligation was $62,250. Following debtors' default, a judgment of foreclosure fixing the claim of Dominion at $78,000 was entered on January 16, 1992. Prior to sheriff's sale, debtors filed their Chapter 11 petition on June 1, 1992.

The debtors' Chapter 11 plan proposes repayment of Dominion's claim over a twenty year period, with 7% interest. The plan also proposes payment of an Internal Revenue Service ("IRS") priority claim of

$19,660 with 7% over 72 months, and payment to unsecured creditors in full, with 7% interest over a seven year period. Both the IRS and the class of unsecured creditors consent to the treatment proposed.

At the confirmation hearing, debtors were successful in demonstrating that all 11 U.S.C. § 1129(a) requirements except § 1129(a)(8) have been met. Dominion, designated as class 1, rejected the plan and offered several objections to the confirmation of the plan. Dominion argues that its treatment under the plan is "improper, and neither fair nor equitable". Dominion also contends that since the Chapter 13 consumer debtor is precluded under 11 U.S.C. § 1322(b)(2) and *First National Fidelity Corp. v. Perry*, 945 F.2d 61 (3d Cir.1991) from satisfying a foreclosure judgment in full through the life of a Chapter 13 plan, "a Chapter 11 proceeding should not be utilized to circumvent Chapter 13 requirements" and to subvert the congressional intent to protect home mortgage lenders.

### Discussion

1. **SATISFACTION OR MODIFICATION OF A FORECLOSURE JUDGMENT THROUGH A CHAPTER 11 PLAN.**

■ Within the Chapter 13 framework, the Third Circuit Court of Appeals has determined that in the context of New Jersey law, a debtor's right to cure a home mortgage default expires when the mortgagee obtains a foreclosure judgment. *In re Roach*, 824 F.2d 1370 (3d Cir.1987). At the point of entry of the foreclosure judgment, the mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished.[1] The court found no

"statutory language, legislative history, or a significant federal interest mandating federal interference with state foreclosure [processes] ... beyond the entry of a foreclosure judgment." *Id.* at 1378–79. In *Perry*, the circuit held that after a foreclosure judgment has been entered on a New Jersey home mortgage, Chapter 13 does not authorize a plan which calls for payment of the judgment over the three to five years of the plan. To permit confirmation of such a plan would be to impermissibly modify the rights of a claim secured only by the debtor's principal residence, in violation of 11 U.S.C. § 1322(b)(2).[2]

■ After *Roach* and *Perry*, consumer debtors, with no recourse in Chapter 13 where foreclosure judgments have been entered on New Jersey home mortgages, have filed Chapter 11 cases to treat foreclosure judgments through Chapter 11 plans. The Supreme Court determined in *Toibb v. Radloff*, —— U.S. ——, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991), that an individual consumer debtor is eligible to reorganize under Chapter 11. The opportunities of a Chapter 11 debtor in proposing a plan are outlined in 11 U.S.C. § 1123. Under § 1123(a)(5)(E), a Chapter 11 plan "shall ... provide adequate means for the plan's implementation, such as— ... satisfaction or modification of any lien." Lien is defined under the Bankruptcy Code as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). Debt is defined as a "liability on a claim." 11 U.S.C. § 101(12). The meanings of "debt" and "claim" are coextensive. *Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 558, 110 S.Ct. 2126,

---

1. For a recent discussion of the *Roach* merger doctrine, as applied in *In re Stendardo*, 991 F.2d 1089 (3d Cir.1993), see, Louis A. Novellino, *Stendardo Closes the Merger Trilogy*, 134 N.J.L.J. 1279 (Aug. 16, 1993).

2. § 1322. Contents of plan

. . . . . .

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a

security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; ....

2130, 109 L.Ed.2d 588 (1990). Claim means "a right to payment, *whether or not such right is reduced to judgment,* liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A) (Emphasis added). The definition of "claim" is expansive.

> For example, to the extent the phrase "right to payment" is modified in the statute, the modifying language ("whether or not such right is ...") reflects Congress' broad rather than restrictive view of the class of obligations that qualify as a "claim" giving rise to a "debt." See also H.R.Rep. No. 95–595, *supra,* at 309, U.S.Code Cong. & Admin.News 1978, p. 6266 (describing definition of "claim" as "broadest possible" and noting that Code "contemplates that all legal obligations of the debtor ... will be able to be dealt with in the bankruptcy case"); accord S.Rep. No. 95–989, *supra,* at 22, U.S.Code Cong. & Admin.News 1978, p. 5808.

*Davenport,* 495 U.S. at 558, 110 S.Ct. at 2130.

■ That a foreclosure judgment entered on a New Jersey home mortgage, which "declares a sum certain immediately due and commits the proceeds of the sale of specific property to its satisfaction", *In re Roach,* 824 F.2d at 1378, is included in the expansive definition of a "claim", or "right to payment", should not be disputed. A "right to payment [means] nothing more nor less than an enforceable obligation", *Davenport,* 495 U.S. at 559, 110 S.Ct. at 2131, and includes the right of a mortgage holder, following the entry of an *in rem* judgment, to the proceeds from the sale of the debtor's property. *Johnson v. Home State Bank,* — U.S. —, —, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) (holding that an *in rem* judgment on a mortgage

lien constitutes a "claim" against the debtor, notwithstanding Chapter 7 personal discharge from liability.)

■ By simple application of Code definitions, the opportunity to satisfy or modify a lien under § 1123(a)(5) includes the opportunity to satisfy or modify a secured claim which has been reduced to judgment, including a foreclosure judgment.

■ In passing, distinction is drawn between the concepts of satisfaction and modification authorized in § 1123(a)(5)(E) and the concept of curing default. It is recognized that curing default and reinstating the mortgage after acceleration is permissible only before the entry of foreclosure judgment. "[A]fter the entry of a foreclosure judgment, no contractual relationship remains" to be cured. *In re Roach,* 824 F.2d at 377. Notwithstanding the opportunity to cure default under § 1123(a)(5)(G),[3] as with Chapter 13 cases, "an individual Chapter 11 debtor's right to cure a default expires once a creditor has obtained a foreclosure judgment on her home mortgage." *Midlantic National Bank v. De Seno,* Civil No. 92–4902, Bankruptcy No. 92–31919 at 4–5, 1993 WL 513212 (D.N.J. March 31, 1993). *See also First Fidelity Bank v. Mulroy,* 1993 WL 235622, 1993 U.S. District Lexis 8594 (following *De Seno* ).

In *De Seno,* a recent District Court decision on the identical issue presented here, the court held that a foreclosure judgment constitutes a judicial lien under the Bankruptcy Code. Because § 1123(a)(5) authorizes a Chapter 11 debtor to modify any lien or indenture,[4] "but does not have specific authority to modify a *judicial* lien," *Id.* at 6, the *De Seno* court concluded that "an individual Chapter 11 debtor is not authorized to modify a foreclosure judgment on her home mortgage." *Id.*

---

**3.** Section 1123 provides in pertinent part:
 (a) Notwithstanding any otherwise applicable non bankruptcy law, a plan shall—

 . . . . .

 (5) provide adequate means for the plan's implementation, such as—

 . . . . .

 (G) curing or waiving of any default

**4.** 11 U.S.C. § 1123(a)(5)(F) authorizes a plan to cancel or modify "any indenture or similar instrument."

■■■ I must respectfully disagree with the *De Seno* conclusion.[5] The premise of *De Seno* is that a foreclosure judgment is a judicial lien. "Judicial lien" is a defined term in the Code meaning a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). The operative word in the definition is "obtained". In the case of a judicial lien, the lien, or charge against property to secure payment of a debt, was obtained by, or arose, from the entry of a judgment. In contrast, the lien which remains a charge against property following the entry of a foreclosure judgment was obtained by, or arose, consensually, when the underlying mortgage and note or bond were executed. Notwithstanding the termination of the contractual relationship between the parties, the lien remains a charge against the property through the foreclosure judgment. *First National Fidelity Corp. v. Perry*, 945 F.2d at 64, quoting *In re Brunson*, 87 B.R. 304, 311 (Bankr.D.N.J.1988). The lien was not "obtained" by the entry of the judgment.

■■■ Even if the lien of the holder of a foreclosure judgment is characterized as a judicial lien, the *De Seno* conclusion also depends upon the hypothesis that the concept of "judicial lien" is not encompassed within the statutory language of § 1123(a)(5)(E), which authorizes a plan to satisfy or modify any lien. This hypothesis ignores the definitional structure of the Code outlined above, i.e. that a lien is a charge against property to secure payment of a liability on a claim, whether or not the liability has been reduced to judgment. 11 U.S.C. §§ 101(37), 101(12) and 101(5). The hypothesis also ignores the word "any" in the description of the opportunity of a Chapter 11 debtor to satisfy or modify "any lien" under 11 U.S.C. § 1123(a)(5)(E), which expression, by a literal reading, would include "judicial" lien. We are reminded by the Supreme Court to "avoid construing one provision in a statute so as to suspend or supersede another provision. To avoid 'deny[ing] effect to a part of a

statute,' we accord 'significance and effect ... to every word.'" (Citations omitted). *Rake v. Wade*, —— U.S. ——, ——, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993).

Notably absent from the Chapter 11 framework is the anti-modification provision intended to benefit home mortgage lenders contained in § 1322(b)(2). The prohibition "against modification of the rights of home mortgage lender was intended to make home mortgage money on affordable terms more accessible to homeowners by assuring lenders that their expectations would not be frustrated." *Perry*, 945 F.2d at 64. The home mortgage lender here, Dominion, urges that Congress could not have intended to provide protection to such lenders in a Chapter 13 case, with an opportunity by consumer debtors to circumvent such protection in a Chapter 11.

The argument was accepted in a recent decision in this district, *In re Smith*, 156 B.R. 11 (Bankr.D.N.J.1993). Following the *Perry* recitation regarding the protection afforded to home mortgage lenders in § 1322(b)(2) "to its logical conclusion", the court in *Smith* opined that:

> the Third Circuit would also not permit a modification of home mortgagees' rights in Chapter 11 since to do so would defeat the very purpose of Congress in singling out home mortgagees in the Chapter 13 provisions. Since no specific provision in Chapter 11 permits such a payment scheme as proposed by the debtor here, it follows that the debtor's attempt at such a payment flies in the face of the principles enunciated in *Perry* and therefore his plan of reorganization cannot be confirmed.

*Id.* at 13–14.

■■■ Several reasons compel me to disagree with the *Smith* conclusion that a Chapter 11 debtor may not modify the rights of a home mortgage lender after entry of foreclosure judgment. First, it is not permissible to judicially expand the congressional purpose "in singling out home

---

5. The binding nature of district court rulings upon bankruptcy courts in the same district has been seriously questioned. *See, e.g., In re Shat-*

*tuc Cable Corporation,* 138 B.R. 557, 565–66 (Bankr.N.D.Ill.1992) and *In re Gaylor,* 123 B.R. 236, 242 (Bankr.E.D.Mich.1991).

mortgagees in the Chapter 13 provisions," to include Chapter 11. The Chapter 13 anti-modification provision is simply absent from Chapter 11. Our speculation that if Congress had focused upon individual consumer debtors filing Chapter 11 cases, home mortgage lenders would have received the same protection they have in Chapter 13 cannot sustain the judicial insertion into Chapter 11 of the anti-modification provision, particularly where the statute specifically authorizes modification. 11 U.S.C. § 1123(a)(5)(E).

■ Second, the *Smith* court finds "no specific provision in Chapter 11" which would permit a payment scheme for satisfaction of a foreclosure judgment, ignoring a Chapter 11 debtor's opportunity to modify or satisfy a lien under § 1123(a)(5)(E), even after the entry of foreclosure judgment. We note in this regard another "specific provision" in Chapter 11 which authorizes satisfaction of a foreclosure judgment through a Chapter 11 plan. Under 11 U.S.C. § 1123(b)(1), a plan may "impair or leave unimpaired any class of claims, secured or unsecured." Impairment is defined in 11 U.S.C. § 1124,[6] and includes the alteration of "the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such

claim or interest." By this statute, a Chapter 11 debtor may alter the legal rights of a home mortgage lender who holds a foreclosure judgment against his residence. *See, e.g., In re Coastal Equities Inc.*, 33 B.R. 898 10 C.B.C. 614 (Bankr.S.D.Calif.1983) (§ 1123(b)(1) authorizes modification of a contractual relationship).

■ Third, as the *Smith* court acknowledged, notwithstanding the similarity of many Chapter 11 and Chapter 13 provisions, there is no basis to conclude, as a general matter, that Chapter 11 and Chapter 13 are otherwise parallel. The structure of each Chapter is substantially different in many ways, including voting requirements,[7] imposition on post-petition income and assets,[8] and income eligibility requirements.[9] As the Supreme Court reflected in *Toibb v. Radloff*, —— U.S. at ——, 111 S.Ct. at 2201,

"[D]ifferences in the requirements and protections of each Chapter reflect Congress' appreciation that various approaches are necessary to address effectively the disparate situations of debtors seeking protection under the Code."

There is no inconsistency here with the *Roach* discussion that "[s]ection 1123 of

6. § 1124. Impairment of claims or interest.

Except as provided in section 1123(a)(4) of this title, a class of claim or interest is impaired under a plan unless, with respect to each claim or interest of such class, the plan—

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest;

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(3) provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to—

(A) with respect to a claim, the allowed amount of such claim; or

(B) with respect to an interest, if applicable, the greater of—

(i) any fixed liquidation preference to which the terms of any security representing such interest entitle the holder of such interest; or

(ii) any fixed price at which the debtor, under the terms of such security, may redeem such security from such holder.

7. Compare 11 U.S.C. § 1126 and 11 U.S.C. § 1325.

8. Compare 11 U.S.C. § 541 with 11 U.S.C. § 1306(a).

9. Compare 11 U.S.C. § 109(d) and § 109(e).

Chapter 11 [§ 1123(a)(5)(G), authorizing the curing or waiving of any default] and § 1322 of Chapter 13 [§ 1322(b)(5), authorizing the curing of any default within a reasonable time] are parallel provisions, and we believe it very likely that Congress' understanding of the authorization to cure defaults in each was identical." 824 F.2d at 1376. It is also likely that Congress' understanding of the concept of modification was identical in Chapter 11 and Chapter 13. The difference is that in Chapter 13, Congress proscribed modification of the rights of home mortgage lenders, while in Chapter 11, there is no such proscription.

Fourth, although the *Smith* court relies upon the reasoning and analysis in *Perry* that "the bankruptcy code could not be used to force payment of foreclosure judgments over a period of years as opposed to the immediate satisfaction which mortgagees were entitled", *Smith*, 156 B.R. at 13, the *Perry* court focused in this regard on the § 1322(b)(2) anti-modification provision of Chapter 13. In its discussion, the *Perry* court recognized that "§ 1322(b)(2) would clearly authorize such an alteration or deferral if the lender's claims were not secured solely by a mortgage on the debtor's residence." *Perry*, 945 F.2d at 65. By acknowledging that in the absence of the anti-modification provision, alteration or deferral of the immediate right to payment by a home mortgage lender upon the entry of a foreclosure judgment is permissible, the circuit paved the way for the conclusion that where the anti-modification provision is absent, e.g., in the Chapter 11 framework, such alteration or deferral is "clearly authorize[d]". *Id.*

In concluding that there is express statutory authority for treatment of a foreclosure judgment in a Chapter 11 plan, we are mindful of the admonitions in *Roach* and *Perry* that state law rights must prevail absent specific and clearly expressed congressional intention to preempt state law. As reflected in *Roach*,

Pre-emption must either be explicit, or compelled due to an unavoidable conflict between the state law and the federal law. (Citations omitted) ... Statutes should therefore be construed to avoid pre-emption, absent an unmistakable indication to the contrary. (Citations omitted).

824 F.2d at 1373. The *Roach* court found no statutory language or legislative history, and perceived no "significant federal interest" evidencing congressional intention to afford home mortgage debtors the right to set aside or suspend state court judgments. *Id.* at 1378.

Here, in the Chapter 11 context, we do not reach legislative history or the question of congressional intent to protect home mortgage lenders. Nor do we examine whether "a significant federal interest" can be discerned through judicial perceptions. As in *Toibb v. Radloff*, — U.S. at ——, 111 S.Ct. at 2199, "the plain language of the Bankruptcy Code disposes of the question before us." Where the plain language of the Bankruptcy Code is clear, there is no basis to examine legislative history or policy considerations. Our "'sole function is to enforce [the statutory language] according to its terms.'" *Rake v. Wade*, — U.S. ——, ——, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993) (quoting *United States v. Ron Pair Enterprises*, *Id.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)).

11 U.S.C. § 1123(a)(5)(E) specifically authorizes satisfaction or modification of a lien, whether or not the underlying liability has been reduced to judgment. "[D]eferral of a presently due obligation for a period of three to five years constitutes a 'modification' of that obligation within the plain meaning of that word." *Perry*, 945 F.2d at 65.[10] We are "loathe to infer" a congressional intention to apply the anti-modification provision of § 1322(b)(2) into

---

**10.** *Perry* addresses the term "modification" in the context of a Chapter 13 plan. However, we can assume that congressional understanding of the term is identical in Chapter 11. *See* discussion *supra* pp. 596–97. *See also, Nobleman v.*

*American Savings Bank*, — U.S. ——, ——, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228 (1993) (discussion of the term "modification" in the context of the rights of homestead mortgagees under § 1322(b)(2)).

the Chapter 11 framework, where Congress has failed to place such provision. *Toibb v. Radloff,* —— U.S. at ——, 111 S.Ct. at 2199.

In another context, the Supreme Court refused to "rewrite the [Bankruptcy] Code" to insert within the Chapter 13 framework the Chapter 7 nondischargeability provision regarding criminal restitution obligations, 11 U.S.C. § 523(a)(7), notwithstanding the Court's reluctance to conclude

> that Congress intended to interfere with States' administration of their criminal justice systems. *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971).... [P]ermitting discharge of criminal restitution obligations may hamper the flexibility of state criminal judges in fashioning appropriate sentences and requires state prosecutors to participate in federal bankruptcy proceedings to safeguard state interests. [*Kelly v. Robinson*] 479 U.S. [36], at 49, 107 S.Ct. [353,] at 360 [93 L.Ed.2d 216 (1986)]. Certainly the legitimate state interest in avoiding such intrusions is not lessened simply because the offender files under Chapter 13 rather than Chapter 7. Nonetheless, the concerns animating *Younger* cannot justify rewriting the Code to avoid federal intrusion. Where, as here, congressional intent is clear, our

sole function is to enforce the statute according to its terms.

*Davenport,* 495 U.S. at 564, 110 S.Ct. at 2133–34. At the time *Davenport* was decided, exceptions to discharge in Chapter 13 did not include criminal restitution orders.[11] *Davenport* also relied on the "broadest possible" definition of "debt" to conclude that criminal restitution obligations were dischargeable debts in a Chapter 13 case.

Similarly, here, in the absence of an anti-modification clause such as § 1322(b)(2) in Chapter 11, with specific statutory authority under § 1123(a)(5)(E) to modify liens, which include, under the "broadest possible" definition of "debt", foreclosure judgments, our sole function is to enforce the statute according to its terms, i.e. to recognize that a Chapter 11 plan may satisfy or modify a foreclosure judgment.

## 2. THE "FAIR AND EQUITABLE" REQUIREMENT OF § 1129(b).

Debtors' opportunity to treat a foreclosure judgment in a Chapter 11 plan over the objection of a dissenting class of creditors is subject to 11 U.S.C. § 1129(b) requirements.[12] To confirm a plan over the objection of an impaired dissenting class of secured claims, the requirements of both sections 1129(b)(1) and 1129(b)(2)(A) must

---

**11.** In response to *Davenport,* 11 U.S.C. § 1328(a) was amended by Congress to except from discharge any debt "for restitution included in a sentence on the debtor's conviction of a crime." Criminal Victims Protection Act of 1990, Pub.L. No. § 3, 104 Stat. 2865 and Crime Control Act of 1990, Pub.L. No. 101–647 § 3103(3), 104 Stat. 4789, 4916.

**12.** Section 1129 provides in part:

> (b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.
>
> (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

> (A) With respect to a class of secured claims, the plan provides—
> (i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
> (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
> (iii) for the realization by such holders of the indubitable equivalent of such claims.

be met. Jack Friedman, *What Courts do to Secured Creditors in Chapter 11 Cramdowns,* 14 Cardozo L.Rev. 1495, 1500 (1993).

 Paragraph 1 of § 1129(b) requires that the plan must not "discriminate unfairly" and must be "fair and equitable". To avoid unfair discrimination, a plan must treat similarly situated creditors equally. Only one secured creditor is treated in debtor's plan. The issue is not implicated here. The "fair and equitable" rule, borne as "a special term of art applying the absolute priority rule,"[13] Friedman, *supra* at 1505, is an amorphous concept which was purposely left undefined in the Bankruptcy Code to "avoid statutory complexity" and to preserve judicial application of certain fundamental pre-Code factors to insure fair and equitable treatment of dissenting classes.[14] Kenneth N. Klee, *Cram Down II,* 64 Am.Bankr.L.J. 229, 231 (1990) (citing legislative history). The "uncodified" or "implicit" aspect of the fair and equitable rule in paragraph 1 of § 1129(b) continues to evolve through a "gradual process of historical and judicial 'inclusion and exclusion'". *Id.* at 229.

Paragraph 2(A) of § 1129(b) lists the "codified" or "explicit" fair and equitable standards for the cramdown of secured creditors' claims. The explicit requirements as to each secured creditor, under § 1129(b)(2)(A), stated in the disjunctive, include that (i) a secured creditor must either receive sufficient deferred payments under the plan, or (ii) the collateral shall be sold, with the creditor's lien to attach to proceeds, or (iii) the creditor receives the "indubitable equivalent" of its claim.

█ Under § 1129(b)(2), the condition that a plan be fair and equitable with respect to a class "includes" the explicit requirements described above. The term "includes", as defined in 11 U.S.C. § 102(3) is "not limiting". Therefore,

> simple technical compliance with the requirements of section 1129(b)(2) does not assure that the plan is fair and equitable. Instead, this section merely sets minimal standards that a plan must meet, and does not require that "every plan not prohibited be approved."

*In re Sandy Ridge Dev. Corp.,* 881 F.2d 1346, 1352 (5th Cir.1989) (citations omitted). "A court must consider the entire plan in the context of the rights of the creditors under state law and the particular facts and circumstances when determining whether a plan is 'fair and equitable.'" *In re D & F Const., Inc.,* 865 F.2d 673, 675 (5th Cir.1989). *See also Friedman, supra,* at 1506–07, n. 50 (collection of cases reflecting articulations of the implicit requirements of the fair and equitable rule).

 A Chapter 11 plan proposing a long term payment must be literally fair and equitable. *In re Manion,* 127 B.R. 887, 889–90 (Bankr.N.D.Fla.1991). In *Manion,* a fully secured creditor objected to confirmation of a Chapter 11 plan based upon the plan's conversion of a five year balloon note into a twenty year note. The bankruptcy court held that the conversion of a five year balloon note on a commercial property into a twenty year note was not fair and equitable treatment of a fully secured creditor, and thus the plan was not confirmable. The court focused upon feasibility factors[15] in analyzing debtor's pro-

**13.** The absolute priority rule, statutorily applied to unsecured claims, 11 U.S.C. § 1129(b)(2)(B), and equity interests, 11 U.S.C. § 1129(b)(2)(C), requires that a senior class receive 100% of its claim before a junior class receives any payments. *See also Case v. Los Angeles Lumber Prods., Co.,* 308 U.S. 106, 115–18, 60 S.Ct. 1, 7–8, 84 L.Ed. 110 (1939).

**14.** A discussion of pre-Code law applying "fundamental" factors in the context of the fair and equitable rule may be found at 5 *Collier on Bankruptcy* 1129.03[2], 1129–70 through 75 (15th ed. 1993). In the pre-Code case of *Consol-*

*idated Rock Products, Co. v. Du Bois,* 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982 (1941), the Supreme Court noted that no plan could be fair and equitable unless "[f]ull compensatory provision ... be made for the entire bundle of rights which the creditors surrender." *Id.* at 528, 61 S.Ct. at 686.

**15.** Linkage between a feasibility determination and the separate requirement that a plan be "fair and equitable" was recognized in pre-Code cases. 5 *Collier on Bankruptcy,* 1129.03 at 1129–72 (15th ed. 1993). For instance, in *Consolidated Rock Products Co. v. Du Bois,* 312 U.S. at

posal, including risks to the secured creditor, and couched the discussion in terms of a literal application of the "fair and equitable" language of § 1129(b).

Other cases in which long term payout plans were proposed have met with mixed results. Plans have been confirmed following the entry of a foreclosure decree in state court, where the plan extended the original seven year term of the obligation to payment over twenty years, *In re Martin,* 66 B.R. 921 (Bankr.D.Mont.1986), and where a state court judgment requiring payment over an eighteen month period was proposed to be paid over twenty years, with interest. *In re Mulnix,* 54 B.R. 481 (Bankr.N.D.Iowa 1985). *See also In re Club Assocs.,* 107 B.R. 385 (Bankr.N.D.Ga. 1989) (confirming a plan which proposed negative amortization of the secured obligation); *In re Crane Automotive, Inc.,* 88 B.R. 81 (Bankr.W.D.Pa.1988) (confirming a plan even where the deferred cash payments extend beyond the original maturity date of the obligation); *In re Naugle's Nursery, Inc.,* 37 B.R. 574 (Bankr.S.D.Fla. 1984) (confirming a plan proposing a fourteen year payout of notes otherwise payable over three to seven years); *In re Hollanger,* 15 B.R. 35 (Bankr.W.D.La.1981) (confirming a plan proposing to extend payments for seven years); and *In re Benson,* 9 B.R. 854 (Bankr.N.D.Ill.1981) (confirming a plan which extended note payable in two years to a note payable over twenty years). Plans were not confirmed in other negative amortization cases, including *In re Memphis Partners, L.P.,* 99 B.R. 385 (Bankr. M.D.Tenn.1989) and *In re Spanish Lake Assocs.,* 92 B.R. 875 (Bankr.E.D.Mo.1988). Confirmation was also denied where a plan called for a thirty year payout on a short term indebtedness. *In re White,* 36 B.R. 199 (Bankr.D.Kan.1983). Among the factors considered in each case to determine whether a particular plan is fair and equitable have been the debtor's demonstration of feasibility, the protections and risks to the secured creditors, and the general reasonableness of the proposals in light of the circumstances posed.

In *In re EFH Grove Tower Assocs.,* 105 B.R. 310, 313 (Bankr.E.D.N.C.1989), confirmation of a debtor's Chapter 11 plan was denied where the plan was not "literally" fair and equitable. The proposed plan afforded minimal prospect of gain to the secured creditor, while the plan imposed substantial risks on the creditor. In contrast, the debtor could derive significant benefits from the plan, but accepted only minimal risks. While recognizing that the alteration of a pre-bankruptcy bargain which existed between a debtor and the primary creditor "is the essence of chapter 11 reorganizations", the court determined that it "will not approve such a one-sided rearrangement as that proposed by the debtor." *Id. See also In re Cheatham,* 78 B.R. 104 (Bankr.E.D.N.C.1987), *aff'd* 91 B.R. 377 (E.D.N.C.1988).

As we have reflected, the "implicit" fair and equitable requirement must be applied in the context of the rights of the creditor under state law. *In re D & F Const. Co.,* 865 F.2d at 675. Under New Jersey law,

> "[t]he final judgment in an action to foreclose a real estate mortgage fixes the amount due under the mortgage and directs the sale of the real estate to raise funds to satisfy the amount due." (Citations omitted). The judgment thus declares a sum certain immediately due and commits the proceeds of the sale of specific property to its satisfaction.

*Roach,* 824 F.2d at 1378. Debtor may redeem his house by tendering the full amount due at any time up to ten days after the foreclosure sale. The bankruptcy law extends that right until sixty days after the order for relief. 11 U.S.C. § 108(b); *Perry,* 945 F.2d at 65.[16]

---

525–26, 61 S.Ct. at 685, the Court reflected that "[f]indings as to the earning capacity of an enterprise are essential to a determination of the feasibility as well as the fairness of a plan of reorganization."

**16.** The *Perry* Court expressed concern that forcing a home lender to accept payment of a foreclosure judgment over the three to five years of a chapter 13 plan "not only would be without statutory authorization but would appear at odds with the congressional intent behind

At the time of the filing of the bankruptcy petition, Dominion held, by their foreclosure judgment, an immediate right to payment in full, or the direction of the sale of debtor's real estate to raise funds to satisfy the amount due. Debtors cannot look to the terms of the underlying mortgage, which extended the terms of payment over a thirty year period, and which mortgage merged into the foreclosure judgment. Debtors' property rights, as well as the rights of the secured creditor Dominion at the time of the filing of the bankruptcy petition "are created and defined by state law", *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979), except to the extent that the Bankruptcy Code specifically authorizes a departure from state law.

While, as we have noted, the debtors may modify the rights of Dominion, who would otherwise be entitled to immediate payment of the obligation due from the proceeds of the sale of the real estate, such modification must be "fair and equitable" in the context of the rights of creditors under state law. It is impossible to conclude that modification of a secured creditor's opportunity for immediate sale of the property to satisfy its claim from the proceeds, to require a twenty year waiting period for payment in full of the claim, is a "fair and equitable" treatment of the claim under § 1129(b).

We recall that cases interpreting the "fair and equitable" rule have often focused on questions of feasibility and risk. Although debtors' income is marginal, we were impressed with debtors' ability to maintain post-petition adequate protection payments to Dominion. As well, we note that the plan contemplates no negative amortization. The outstanding debt would be amortized over the life of the plan. On the question of risk to the secured creditor, although Dominion is clearly oversecured (the value of the debtors' home is listed on the petition at $112,500, after deduction of costs of sale, whereas the amount of the foreclosure judgment is $78,000), the continuous accrual of interest on the obligation, coupled with the prospect that the property might depreciate in value, places the risk of debtors' default under the Chapter 11 plan entirely upon the secured creditor.[17]

Notwithstanding consideration of other factors, the focus here is upon the extended payout proposed by the debtors in light of the *Roach* and *Perry* discussions of a secured creditor's entitlement to immediate payment from the proceeds of the sale of collateral following entry of a foreclosure judgment. The modification of Dominion's state law rights, from immediate payment to a twenty year payout, regardless of compliance with § 1129(b)(2)(A) deferred payment requirements,[18] cannot be sustained.

For the reasons advanced, I conclude that the plan as proposed may not be confirmed. Counsel for Dominion shall submit an order in conformance herewith.

---

§ 108, the Code provision extending the right of redemption until sixty days following the order of relief." *Id.* at 65. However, as noted above, statutory authorization does exist for satisfaction or modification of the foreclosure judgment, § 1123(a)(5)(E), and for the impairment of a secured claim. 11 U.S.C. § 1123(b)(1). As well, the *Roach* court noted that § 108 simply extends the state law time period within which the debtor may exercise a state law right of redemption, and "has no bearing on the scope of the authorization to cure defaults found in § 1322(b)." *Roach*, 824 F.2d at 1372 n. 1. Similarly, § 108(b) has no bearing on the satisfaction or modification of a lien under § 1123(a)(5)(E).

**17.** No testimony was received at the confirmation hearing regarding the value of the debtors'

residence or the prospects of appreciation or depreciation. The burden is on the debtor to show, by a preponderance of the evidence, that the protection provided under the proposed plan is completely compensatory. *In re Briscoe Enterprises Ltd. II*, 994 F.2d 1160, 1165 (5th Cir.1993).

**18.** We need not take up the question of whether the interest rate proposed to be paid by debtor in the plan constitutes present value for § 1129(b)(2)(A)(i)(II) purposes, although we recognize the potential significance of the interest rate proposed to be paid in the context of the implicit "fair" and "equitable" requirement. *See, e.g., In re Spanish Lake Assocs., supra.*